NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPHINE COIRO, on behalf of herself and others similarly situated,

        Plaintiffs,

v.

WACHOVIA BANK, N.A., WELLS FARGO BANK, N.A., and WELLS FARGO & COMPANY,

        Defendants.

Civ. No. 11-3587

OPINION

THOMPSON, U.S.D.J.

      This matter has come before the Court on Defendants Wachovia Bank, N.A., Wells Fargo Bank, N.A., and Wells Fargo & Company's (collectively, the "Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. [Docket #10]. The Plaintiff in this case, Josephine Coiro, opposes this motion. The Court has decided this matter after considering the parties' written submissions and without holding oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court will deny Defendants' Motion to Dismiss.

    **I.**    **FACTS**

      The Court accepts as true for the purposes of deciding this motion all of the well-pleaded facts of the Plaintiff's Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

      Plaintiff, a resident of Jackson, New Jersey, and her daughter, Annette Coiro (the "Debtor"), have had a joint bank deposit account with the Defendants since March of 1995. (Compl., ¶ 7, 23). Despite the Debtor's inclusion as a joint holder of the account, only Plaintiff

1

deposited funds into and withdrew funds from the joint account. (*Id.*, ¶ 26). Therefore, Plaintiff alleges that only she had a property interest in the account, despite the account being jointly held.

On April 8, 2010, Plaintiff deposited $381,272.08, the proceeds from the sale of her home, into the joint account. (*Id.*, ¶ 28). Then, on April 13, 2010, the Debtor filed for protection under chapter 7 of the Bankruptcy Code. (*Id.*, ¶ 29). Upon discovering that the Debtor filed for bankruptcy protection, Wells Fargo placed an administrative hold on all proceeds of the joint account and notified the Plaintiff, the Debtor, and the bankruptcy trustee (the "Trustee") of its actions. (*Id.*, ¶ 30). The Trustee thereafter requested that Defendants turn over one-half of the proceeds in the joint account because the Trustee considered this to be property of the Debtor's bankruptcy estate. (*Id.*, at ¶ 31).

The Plaintiff hired counsel to represent her in the bankruptcy case and, several months later, was able to secure the release of the remaining funds in the joint account. (*Id.*, at ¶ 32, 33). Plaintiff alleges in her Complaint that the Defendants are liable under various legal theories by virtue of Wells Fargo's policy of placing a temporary administrative hold on deposit accounts when only one of the account holders has filed for bankruptcy protection. Plaintiff seeks class action certification and money damages. (*Id.*, ¶¶ 13, 14).

II.     **LEGAL STANDARD**

    a.  <u>Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

Under Fed. R. Civ. P. 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court should conduct a two-part analysis. First, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203,

2

210–11 (3d Cir. 2009). The court, however, may disregard any legal conclusions proffered in the complaint. *Id.*

Once the well-pleaded facts have been identified, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

On a Rule 12(b)(6) motion, a district court may take into consideration an affirmative defense if such a defense "presents an insuperable barrier to recovery by the plaintiff." *Flight Sys. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127 (3d Cir. 1997) (citing *Continental Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir. 1942)). This defect in the plaintiff's claim must "appear on the face of the pleading." *Continental Collieries*, 130 F.2d at 635–36; *see also Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *Brody v. Hankin*, 145 F. App'x 768, 771 (3d Cir. 2005) (stating that this requirement is "critical"). When a Rule 12(b)(6) motion is based on an affirmative defense, a fact that is left out of the complaint but that is necessary proof required to prevail on the basis of that affirmative defense will be fatal to the defendant's motion. *See, e.g., Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 831 (3d. Cir. 2010).

### III.   DISCUSSION

The Defendants in this case argue that all of the facts as alleged in the complaint merely indicate that they were complying with their legal obligations under the Bankruptcy Code.

3

Pursuant to Bankruptcy Code § 542(b), "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." 11 U.S.C. § 542(b). Defendants posit that they were required to comply with this statute, and the Bankruptcy Code pre-empts all of the state law allegations made in the complaint. Therefore, the Defendants cannot be held liable on these state law claims.

Inherent in the Defendants' argument is the proposition that the joint account was property of the bankruptcy estate. This is a heavily fact-based determination. In the Complaint, the Plaintiff specifically alleges that the funds in the joint account "are and were at all relevant times, solely Mrs. Coiro's property. At no time did Debtor have any interest or equity in the Account." (Compl., ¶35). Although one could argue that this is a legal conclusion rather than a factual allegation that this Court is free to ignore, *see Fowler*, 578 F.3d at 210–11, numerous other facts are alleged that make this allegation plausible. For example, Plaintiff contends the following: (1) at no time did the Debtor deposit funds into or withdraw funds from the joint account, (Compl., ¶ 27); (2) Plaintiff made numerous deposits into the joint account, which included the deposit of proceeds from the sale of her home, as well as pension and social security payments, (*Id.*, ¶¶ 26, 28); and (3) Plaintiff was eventually held to be entitled to all of the joint account funds by the bankruptcy court, (*Id.*, ¶ 33). On these facts, it is plausibly established that the funds located in the joint account were the sole property of the Plaintiff.

Under the Bankruptcy Code, state law generally determines what assets become part of the estate. *See, e.g., In re O'Dowd*, 233 F.3d 197, 202 (3d Cir. 2000) ("While federal law defines what types of property comprise the estate, state law generally determines what interest, if any, a debtor has in property."). Defendants argue that there is a presumption in New Jersey law that joint account holders have an equal ownership interest in the account, and therefore the

4

funds in the joint account were the property of the bankruptcy estate as a matter of law.  The statute at issue, N.J.S.A. § 17:16I-4 ("MPDA § 4"), provides as follows:

> Unless a contrary intent is manifested by the terms of the contract, or the deposit agreement, or there is other clear and convincing evidence of a different intent at the time the account is created: (a) A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal.

N.J.S.A. § 17:16I-4.  Reading this statute for its plain meaning, in order to determine that the presumption pointed to by the Defendants applies in this case, the Court would first have to determine that there is an "absence of proof of net contributions."  It is only in this absence of proof as to who contributed to the account that the presumption of one-half ownership interest applies.  *Cf. In re Catenaccio*, No. 10-13928, 2010 Bankr. LEXIS 4755, *13–14 (D.N.J. Dec. 16, 2010) (referring to ownership in proportion to the net contributions by each depositor as itself a presumption).

At least one case in this district has discussed the presumptions attendant to MPDA § 4. In *Kieffer v. New Century Fin. Servs., Inc.*, No. 10-3938, 2011 U.S. Dist. LEXIS 53886 (D.N.J. May 19, 2011), the court stated that "[g]enerally, in 'equal share' jurisdictions, a rebuttable presumption is in effect so that the debtor is presumed, absent proof to the contrary, to own one-half of the joint account**."** *Id.* at *4.  To the extent that this decision reads MPDA § 4 as requiring an affirmative showing of net contributions to overcome a presumptive one-half ownership interest, this Court rejects such a reading.  First, this would misread the plain meaning of the statutory text.  The presumption of one-half interest applies only "in the absence of proof." In other words, it is the absence of proof that creates the presumption; it is not the showing of proof that defeats the presumption.  Second, the cases cited by the court in *Kieffer* are from

5

jurisdictions in which there is either no statute (i.e., they rely on the common law)[1] or in which the state statute being interpreted is fundamentally different from the statute at issue in this case.[2]

---

[1] *See Musker v. Gil Haskins Auto Leasing, Inc.*, 500 P.2d 635, 638 (Ariz. Ct. App. 1972) (interpreting common law).

[2] In *Lewis v. House*, 348 S.E.2d 217, 219 (Va. 19866), the court relied on Va. Code Ann. § 6.1-125.3, which reads as follows: "A joint account belongs, during the lifetimes of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, *except that a joint account between persons married to each other shall belong to them equally, and unless, in either case, there is clear and convincing evidence of a different intent*." (emphasis added).

Likewise, in *Danielson v. Lazoski*, 531 N.W.2d 799, 801 (Mich. Ct. App. 1995), the Court of Appeals of Michigan interpreted the common law and Mich. Comp. Laws § 487.703—a fundamentally different statute—that states in relevant part:

> When a deposit has been made . . . in any banking institution transacting business in this state, in the names of 2 or more persons, payable to either or the survivor or survivors, such deposit or any part thereof or any interest or dividend thereon and any additions thereto, made by any 1 of the said persons, shall become the property of such persons as joint tenants, and the same shall be held for the exclusive use of the persons so named and may be paid to any 1 of said persons during the lifetime of said persons or to the survivor or survivors after the death of 1 of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof.
>
> The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.

Mich. Comp. Laws § 487.703(3).

Finally, in *Johnson v. Kilpatrick*, 233 A.2d 205, 206 (N.Y. App. Div. 1996), the court relied on common law and N.Y. Bank Law § 675.  This statute reads as follows:

> When a deposit of cash, securities, or other property has been made or shall hereafter be made in or with any banking organization or foreign banking corporation transacting business in this state . . . in the name of such depositor or shareholder and another person and in form to be paid or delivered to either, or the survivor of them, such deposit . . . shall become the property of such persons as joint tenants and the same, together with all additions and accruals thereon, shall be held for the exclusive use of the persons so named, and may be paid or delivered to either during the lifetime of both . . ., and such payment or delivery and the receipt or acquittance of the one to whom such payment or delivery is made, shall be a valid and sufficient release and discharge to the banking organization or foreign banking corporation for all payments or deliveries made on account of such deposit or shares prior to the receipt by the banking organization or foreign banking corporation of notice in writing signed by any one of such joint tenants, not to pay or deliver such deposit or shares and the additions and accruals thereon in accordance with the terms thereof, and after receipt of any such notice, the banking organization or foreign banking corporation may require the receipt or acquittance of both such joint tenants for any further payments or delivery.

In *High v. Balun*, 943 F.2d 323 (3d Cir. 1991), the Third Circuit Court of Appeals stated that MPDA § 4 was "intended to allow one party to deposit funds in a joint account *without creating a presumption that the deposit, without more, made a gift to the other party*." *Id.* at 326 (discussing the comment to § 6-103 of the Uniform Probate Code on which MPDA § 4 was based) (emphasis added).

Taking all of the well-pleaded facts contained in the Complaint as true, Plaintiff has plausibly established that Defendants did in fact have proof of net contributions. In paragraph 34 of the Complaint, the Plaintiff states: "Josephine Coiro was the only depositor into the Account. . . . This is substantiated by the Account statements [that she received from the Defendants] for the seven years preceding [the Debtor's] bankruptcy." (Compl., ¶ 34). But even this is beside the point. Nothing in the complaint indicates that the Defendants had an absence of proof. Thus, in order to determine that there was an "absence of proof of net contribution," the Court would have to look to facts past those contained in the Complaint. This is improper when considering a Rule 12(b)(6) motion based on an affirmative defense. *See Continental Collieries*, 130 F.2d at 635–36 (The affirmative defense must appear "on the face of the pleading."); *see also Thomas v. Independence Twp.*, 436 F.3d 285, 293 (3d Cir. 2006).

Defendants next argue, somewhat confusingly, that MPDA § 4 should not apply in this case, but rather N.J.S.A. § 17:16I-8 ("MPDA § 8") should apply.[3] Even assuming—but without

---

N.Y. Bank Law § 675(a).

[3] Defendants in their opening brief seem to concede the applicability of MPDA § 4, (*see* Defs. Op. Brief, at 8). It is not until the Defendant's Reply Brief that they draw the Court's attention to N.J.S.A. § 17:16I-3 ("MPDA § 3"). Under MPDA § 3, "[t]he provisions of sections 4 to 6 concerning beneficial ownership as between parties . . . are relevant only to controversies between these persons and their creditors and other successors . . . . The provisions of sections 8 to 13 govern the liability of financial institutions who make payments pursuant thereto, and their setoff rights." N.J.S.A. § 17:16I-3. Defendants have never explained, however, how they could initially determine that the proceeds in the joint account were part of the bankruptcy estate without referring to MPDA § 4.

deciding—that only MPDA § 8 applies to the Defendants' actions in this case, this motion must still be denied.

MPDA § 8 protects financial institutions only to the extent that actual payments are requested of and made by them. The provisions of § 8 state in relevant part:

> The following <u>payments</u> from a multiple-party account by the financial institution, including <u>payment</u> of the entire account balance, are deemed authorized by all parties to, and any other person with an interest in, the multiple-party account, without any duty on the part of the financial institution to consider the net contributions of the parties to the account: . . . (c) Payments, on request, to a trustee in bankruptcy, receiver in any state or federal insolvency proceeding, or other duly authorized insolvency representative of any one or more of the parties.
>
> A financial institution shall not be required to inquire as to the source of funds received for deposit to a multiple-party account, or to inquire as to the proposed application of any sum withdrawn from an account, for purposes of establishing net contributions.

N.J.S.A. § 17:16I-8 (emphasis added). As is clear from the face of this statute, this provision applies only to payments made by the financial institution. The statute therefore does not come into effect until the trustee in bankruptcy has requested payment from the financial institution and thus says nothing about whether the account freeze that occurred prior to the payment request in this case was proper.[4] Moreover, there are factual determinations not contained in the complaint that must be considered in order to determine whether MPDA § 8 is applicable. In particular, MPDA § 8 requires the following:

> Notice that the entire account balance is subject to subsections (b) and (c) of this section shall be given to the parties by the financial institution, either in the account agreement or by separate document, in the manner the Commissioner of Banking may direct by regulation. *Any account for which notice is not given shall not be subject to the terms of subsection (b) or (c) of this section.*

N.J.S.A. § 17:16I-8 (emphasis added). Thus, Plaintiff may be able to argue that proper notice was not given; nothing in the facts of the Complaint indicate the existence or non-

---

[4] Similarly, N.J.S.A. § 17:16I-12, which absolves financial institutions of liability for *payments* made under § 17:16I-8, does not apply until both request and payment is made.

existence of this fact. Dismissal pursuant to Rule 12(b)(6) would therefore be improper at this stage of the litigation. *See Thomas v. Independence Twp.*, 436 F.3d 285, 293 (3d Cir. 2006) (refusing to establish the "unprecedented rule of pleading *requiring* a plaintiff to set forth allegations negating an affirmative defense") (emphasis in original). Although Defendants may eventually be able to prevail as a matter of law on the facts of this case, they simply cannot do so from the face of the pleading.

In sum, the Court holds that on the procedural posture of this case, Plaintiff has properly pled a valid cause of action. An appropriate Order will follow.

 */s/ Anne E. Thompson*  
**ANNE E. THOMPSON, U.S.D.J**

Date: October 28, 2011