**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| | : | |
| | : | Civil Action No. 11-3587 (AET)(LHG) |
| JOSEPHINE COIRO, on behalf of herself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| WACHOVIA BANK, N.A., WELLS FARGO BANK, N.A. and WELLS FARGO & COMPANY, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION**

---

**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg (bgreenberg@litedepalma.com)
Katrina Carroll (kcarroll@litedepalma.com)
Susana Cruz Hodge (scruzhodge@litedepalma.com)
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858

*Counsel for Plaintiff*

301738 v1

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.........................................2

LEGAL ARGUMENT......................................................................................................6

I.    MRS. COIRO AND WELLS FARGO DID NOT FORM A VALID AGREEMENT
      TO ARBITRATE ................................................................................................ 6

      A.  As A Matter Of Law, Mrs. Coiro Did Not Agree To Arbitrate ............................. 6

      B.  As A Matter Of Fact, Mrs. Coiro Did Not Agree To Arbitrate ............................. 8

II.   ASSUMING THERE IS AN AGREEMENT TO ARBITRATE, THAT
      AGREEMENT IS UNENFORCEABLE................................................................. 11

      A.  *AT&T v. Concepcion* is not controlling ................................................. 12

      B.  The Arbitration Provision Is Unconscionable Under New Jersey Law................ 18

            1.    The Arbitration Provision is Procedurally Unconscionable Because Mrs.
                  Coiro Did Not Assent, or Even have Notice of, the Terms of the 2003 or
                  2010 Amendments. .................................................................................. 20

            2.    The Arbitration Provision is Procedurally Unconscionable Because it Does
                  Not Adhere to the AAA Protocols and Principles of Procedural
                  Unconscionability .................................................................................... 21

            3.    The Arbitration Provision is Unconscionable Because it Contradicts New
                  Jersey's Consumer Fraud Act ................................................................... 25

            4.    The Arbitration Provision is Substantively Unconscionable Because the
                  Consumer Does Not Benefit Equally From the Fee-Shifting Language
                  Contained in Paragraph 26........................................................................ 28

      III.  BOTH PARTIES ELECTED TO PARTICIPATE IN THIS LITIGATION.............. 29

CONCLUSION................................................................................................... 30

**TABLE OF AUTHORITIES**

<u>CASES</u>

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) .................................................................................... *passim*

*B & S Ltd., Inc. v. Elephant & Castle Int'l, Inc.*,
    388 N.J. Super. 160 (Ch. Div. 2006) ........................................................ 28-29

*Badie v. Bank of Am.*,
    67 Cal. App. 4th 779 (Cal. Ct. App. 1998) ...................................................... 20

*Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*,
    181 F.3d 435 (3d Cir. 1999) .............................................................................. 6

*Berman v. Gurwicz*,
    178 N.J. Super. 611 (Ch. Div. 1981) .............................................................. 10

*Carnegie v. Household Int'l., Inc.*,
    376 F.3d 656 (7th Cir. 2004) ........................................................................... 27

*Circuit City Stores, Inc. v. Adams*,
    279 F.3d 889 (9th Cir. 2002) ........................................................................... 16

*Cohen v. Chase Bank, N.A.*,
    679 F. Supp. 2d 582 (D.N.J. 2010) .................................................................. 7

*Cox v. Sears Roebuck & Co.*,
    138 N.J. 2 (1994) ...................................................................................... 27, 28

*Cruz v. Wachovia Mortgage*,
    775 F. Supp. 2d 1188 (C.D. Cal. 2011) .......................................................... 26

*Dayhoff Inc. v. H.J. Heinz Co.*,
    86 F.3d 1287 (3d Cir. 1996) .............................................................................. 8

*Delta Funding Corp. v. Harris*,
    189 N.J. 28 (2006) .................................................................................. *passim*

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ........................................................................................ 17

*Discover Bank v. Shea*,
    362 N.J. Super. 200 (Law Div. 2001) ......................................................... 7, 12

*Doctor's Assocs., Inc.  v. Casarotto,*
  517 U.S. 681 (1996) ............................................................................ 12

*Doctor's Assocs., Inc. v. Distajo,*
  107 F.3d 126 (2d Cir. 1997) ................................................................ 30

*Ehleiter v. Grapetree Shores, Inc.,*
  482 F.3d 207 (3d Cir. 2007) ................................................................ 30

*Englert v. The Home Depot,*
  389 N.J. Super. 44 (App. Div. 2006) ................................................... 30

*Feeney v. Dell Inc.,*
  No. MICV 2003-01158, 2011 WL 5127806 (Mass. Super. October 4, 2011) ..... 13, 17, 18

*FIA Card Services, N.A. v. Cohen,*
  2009 WL 1675533 (N.J. App. Div. June 17, 2009) ............................... 7

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938 (1995) .............................................................................. 6

*Furst v. Einstein Moomjy, Inc.,*
  182 N.J. 1 (2004) ............................................................................ 26, 28

*Ingle v. Circuit City Stores, Inc.,*
  328 F.3d 1165 (9th Cir. 2003) ............................................................ 16

*Invista S.A.R.L. v. Rhodia, S.A.,*
  625 F.3d 75 (3d Cir. 2010) .................................................................... 6

*Kaplan v. First Options of Chicago, Inc.,*
  19 F.3d 1503 (3d Cir. 1994) .................................................................. 8

*Kirleis v. Dickie, McCamey & Chilcote, P.C.,*
  560 F.3d 156 (3d Cir. 2009) .................................................................. 6

*Konieczny v. Micciche,*
  305 N.J. Super. 375 (App. Div. 1997) ................................................. 30

*Kugler v. Romain,*
  58 N.J. 522 (1971) .............................................................................. 20

*Morris v. Fauver,*
  153 N.J. 80 (1998) ................................................................................ 7

*Morrison v. Circuit City Stores, Inc.*,
  317 F.3d 646 (6th Cir. 2003) ........................................................ 16

*NAACP of Camden County E. v. Foulke Mgmt. Corp.*,
  421 N.J. Super. 404 (App. Div. 2011) .................................. 6, 17, 19

*Paladino v. Avnet Computer Techs., Inc.*,
  134 F.3d 1054 (11th Cir. 1998) .................................................... 16

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
  636 F.2d 51 (3d Cir. 1980)........................................................... 7, 8

*Prima Paint Corp. v. Flood & Concklin Mfg. Co.*,
  388 U.S. 395 (1967)....................................................................... 12

*Rudbart v. N. Jersey Dist. Water Supply Comm'n*,
  127 N.J. 344, 356 (1992), *cert. denied*, 506 U.S. 871 (1992).......... 19

*Sanchez v. Valencia Holding Co., LLC*,
  201 Cal. App. 4th 74 (Cal. Ct. App. 2d Dist. 2011) ................. 17, 25

*Sitogun Holdings, Inc. v. Ropes*,
  352 N.J.Super. 555 (Ch. Div. 2002) ............................................. 20

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  130 S. Ct. 1758 (2010).................................................................... 6

*Sutherland v. Ernst & Young LLP*,
  10 Civ. 3332 (KMW)............................................................. *passim*

*Vasquez v. The Superior Court of San Joaquin County*,
  484 P.2d 964 (1971)....................................................................... 20

*Volt Info. Sciences, Inc. v. Bd. of the Trustees of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989)......................................................................... 6

## <u>STATUTES</u>

9 U.S.C. § 2............................................................................ 12, 19

Cal. Civ. Proc. Code § 116.221 ................................................... 15

*N.J.S.A.* 56:8-19 ........................................................................... 25

## <u>OTHER AUTHORITIES</u>

Petition for Writ of Certiorari, *Concepcion*, 2010 WL 6617833 (No. 09-893) ..................... 13

Restatement (Second) of Contracts § 208 cmt. d (1981) ...................................................... 29

## <u>INTRODUCTION</u>

On October 31, 2011, this Court denied Defendants' (collectively defined as "Wells Fargo" or the "Bank") motion to dismiss, finding that this case should proceed on the merits. Dissatisfied with that result, Wells Fargo now seeks the proverbial second bite at the apple, asking the Court to compel Plaintiff to arbitrate her claims in accordance with an elective arbitration provision appearing in a unilateral and surreptitious "bill stuffer" amendment purportedly first sent to Mrs. Coiro four years after she opened her account.  Wells Fargo's motion should be denied for several reasons.

First, Mrs. Coiro did not assent to Wells Fargo's "bill stuffer" amendment, and there is no evidence in the record supporting a finding at this procedural stage that Mrs. Coiro and Wells Fargo otherwise formed a valid agreement to arbitrate.  As such, Mrs. Coiro cannot be bound, as a matter of law or fact, to a contractual agreement to which she did not assent.

Second, even if the Court were to find that the parties formed a valid agreement, the Court should find the agreement unenforceable because it is both procedurally and substantively unconscionable.  The Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), expressly reserved the rights of states to interpret arbitration agreements in keeping with recognized contract principles.  Even a cursory examination of the provision at issue shows that unlike *Concepcion's* seven-page consumer-friendly arbitration provision, Wells Fargo's provision is not a mechanism for resolving disputes.  Instead, Wells Fargo's arbitration provision is one calculated to surprise and disadvantage consumers and serves only to shield Wells Fargo from liability.  Enforcing the arbitration provision in this case would contravene New Jersey's longstanding history of consumer protection.

Third, Wells Fargo cannot exercise any purported right to elect arbitration now.  The clause at issue is not mandatory and its terms are ambiguous.  When the Court examines the clause, it should determine that either: (1) Mrs. Coiro exercised her right to elect to litigate this case when she chose to file suit, and Wells Fargo is precluded to contest that election; or (2) if Wells Fargo does have a right of election that trumps Mrs. Coiro's, Wells Fargo made an election to litigate this case when it filed a motion to dismiss and the Court should not permit it to rescind that election.  For these reasons, Wells Fargo's motion should be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This class action case is about an Account Freeze Scheme (defined in the Complaint), whereby Wells Fargo blindly freezes the bank accounts of non-debtor joint account-holders.  Complaint, ¶¶ 3-4, 20-21.  This matter began on June 21, 2011, when Mrs. Coiro elected to litigate by filing her Complaint.  As will be discussed further *infra*, if Wells Fargo gave itself the right to elect a forum, Wells Fargo also elected to litigate.  On August 31, 2011, Wells Fargo filed a motion to dismiss, arguing that it committed no wrongdoing as a matter of law.  That motion was denied by this Court on October 31, 2011. [*See* Opinion, Docket No. 17].

After the denial of its motion to dismiss, Wells Fargo's answer was due on November 10, 2011.  Wells Fargo sought an extension of this date to November 18, 2011 due to asserted issues of "scheduling and availability," and Mrs. Coiro consented in good faith.  [*See* Consent Order Extending Defendants' Time to Answer the Complaint, Docket No. 18].  Just four days before Wells Fargo's responsive pleading was due, on November 14, 2011, Wells Fargo advised Mrs. Coiro that Wells Fargo now wanted to arbitrate (repudiating its prior election to litigate since its Rule 12(b)(6) motion failed), based on language appearing in certain 2010 deposit Amendments (defined below) that Wells Fargo contended govern Mrs. Coiro's 1999 account. *See* Strouse

Decl. Ex. 1.  Wells Fargo never advised Mrs. Coiro of the existence of the 2003 Amendment (defined below), which it relies on in the instant motion.  *Id.* at Ex. 2.

In support of its motion to compel arbitration, Wells Fargo submits a short Declaration by Timothy Merck, a Vice President in Wells Fargo's Loss Management Controls Group (the "Merck Declaration"), which purportedly authenticates various documents allegedly "govern[ing]" or "applicable to" Mrs. Coiro's account. *See* Merck Decl. ¶¶ 5-8.  Mr. Merck's statements concerning "govern[ing]" and "applicable" documents are inaccurate as a matter of law and, at the very least, present issues of fact that cannot be resolved at this procedural stage.

The *only* document in the record that is signed by Mrs. Coiro and indisputably governs her account is Exhibit A to Mr. Merck's Declaration.  That document, one page in length, is the 1999 account agreement Mrs. Coiro executed when she opened her account with First Union Bank.  The 1999 account agreement is *silent* as to arbitration.

According to Mr. Merck, in 2003, four years after Mrs. Coiro opened her account, and by virtue of a merger of First Union Bank and Wachovia (Wells Fargo's predecessor), the Bank attempted to unilaterally amend Mrs. Coiro's account agreement.  The 2003 Amendment was allegedly mailed to Mrs. Coiro's "then-current address" along with a "welcoming document." Merck Decl. ¶ 6.  Apart from Mr. Merck's statement that the documents were mailed (which is not based on Mr. Merck's personal knowledge as he did not participate in the alleged mailing), there is no evidence that any such mailing actually occurred.  Mr. Merck's Declaration is devoid of any statements as to whether the 2003 Amendment and welcoming document were ever delivered to Mrs. Coiro.

The welcoming document that was allegedly mailed to Mrs. Coiro purports to advise customers of changes to their account agreements.  However, as prominently displayed on the

very first page, the document's recurring theme is that "there are virtually *no changes* to [the] accounts and services."   *See* Merck Decl. Ex. C at p. 2 (emphasis added).   The welcoming document includes various "Quick Facts" to provide "a summary of *important* information about [the] account and services."   *Id.* at p. 5-10 (emphasis added).   Neither these "Quick Facts", nor any of the other pages of the 40-page welcoming document, say anything about arbitration.

The 2003 Amendment that was allegedly mailed to Mrs. Coiro along with the welcoming document is an unsigned, standardized 40-page banking contract in single-spaced small print. Merck Decl. Ex. B.  There is no mention of the word "arbitration" on the front of the contract. *Id*. Rather, the arbitration provision is buried within the 2003 Amendment, appearing as Section 25 of the "General Rules Governing Deposit Accounts" on Pages 25-26 of the 40-page document. *Id.* at p. 25-26.  In no place within Section 25 is the word "arbitration" capitalized or otherwise highlighted to set it apart from the other provisions.

The same holds for Exhibits D and E (the "2010 Amendments") which, according to Mr. Merck, purport to be further amendments "applicable to" Mrs. Coiro's account in the year 2010. *See* Merck Decl. ¶¶ 7-8, Exs. D, E.  Like the 2003 Amendment, the 2010 Amendments contain various terms and conditions in small font, but because the 2010 Amendments use the denser double column format, the arbitration provision is even more buried within the text of these documents.   Further, as in the 2003 Amendment, the Bank neither capitalizes the word "arbitration" nor does anything else to highlight this provision.  Mr. Merck states that the 2010 Amendments were "created in the normal course of business" and maintained by Wells Fargo, but he makes no statement as to whether the 2010 agreements were ever mailed to Mrs. Coiro or any other customer of Wells Fargo.

The provision is substantially similar in the 2003 and 2010 Amendments. It allows for the election of arbitration, provides that each party will pay its own costs and fees, and includes a class action waiver.  *See* Merck Decl. Ex. E at ¶ 25.  Immediately following the arbitration provision, in a section titled "Conflicts/Disputes Involving the Account," is a clause specifying that the customer must reimburse the bank "for any loss, costs of expenses, including without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law, that we incur as a result of any dispute involving your account...."  *Id.* at ¶ 26.

Mrs. Coiro submits her own Declaration which demonstrates that she never agreed to arbitrate her claims in 1999 when she signed her account agreement with First Union, or at any time thereafter. Mrs. Coiro states that, to the best of her knowledge, she did not receive or sign the 2003 Amendment. *See* Josephine Coiro Decl. ¶¶ 3, 5-7.  She further states that she has no understanding of the process of arbitration and that no one at any bank ever explained arbitration and/or gave her any indication that proceeding in arbitration would force her to give up her right to sue in court.  *Id.* at ¶ 9.  Nor at any time did anyone ever explain to Mrs. Coiro that she was giving up her right to litigate on behalf of a class.  *Id.*

Mrs. Coiro also submits the Declaration of her son, Michael Coiro, who has acted as Mrs. Coiro's Power of Attorney since 2009 (for purposes of convenience only) and reviews Mrs. Coiro's financial correspondence.  *See* Michael Coiro Decl. ¶ 2.  Mr. Coiro states that he has never seen the 2010 Amendments, that his mother would have shared these documents with him had they been mailed, and that Mr. Coiro conducted a search of Mrs. Coiro's files, which do not contain the 2010 Amendments.  *Id.* at ¶¶ 2-5.

**LEGAL ARGUMENT**

### I.   MRS. COIRO AND WELLS FARGO DID NOT FORM A VALID AGREEMENT TO ARBITRATE

Under the FAA, "a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute." *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999). On this motion, therefore, the Court must first decide the fundamental threshold question: did Mrs. Coiro and Wells Fargo have a valid agreement to arbitrate? *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 86-87 (3d Cir. 2010) ("the threshold inquiry under §§ 3 and 4 of the FAA [is] whether, under traditional contract law principles, an agreement to arbitrate is enforceable between the parties."). The answer to that question is "no," both as a matter of law and fact.

### A.   As A Matter Of Law, Mrs. Coiro Did Not Agree To Arbitrate.

As the U.S. Supreme Court has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Indeed, "[t]he FAA imposes rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1763 (2010) (*quoting Volt Info. Sciences, Inc. v. Bd. of the Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Whether a party has agreed to arbitration is determined on the basis of ordinary principles of state contract law. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). In New Jersey, a contract to arbitrate requires mutual assent. *NAACP of Camden County E. v. Foulke Mgmt. Corp.*, 421 N.J. Super. 404, 428 (App. Div. 2011). That assent must be

"express and unequivocal." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). Wells Fargo cannot make any such showing here.

This case is factually similar to *Discover Bank v. Shea*, 362 N.J. Super. 200 (Law Div. 2001), a class action related to credit card overcharges. There, like Wells Fargo here, Discover Bank asserted its right to compel arbitration even though its original customer agreement was silent as to arbitration. *Id.* at 202. Discover asserted that it had later amended the original agreement unilaterally "by way of a 'bill stuffer' notice." *Id.* The *Shea* court recognized that "New Jersey courts [] do not permit unilateral amendments to existing agreements to change material terms ... especially where the other party does not have knowledge of the changes." *Id.* at 203 (citing *County of Morris v. Fauver*, 153 N.J. 80, 100 (1998)). Rather, mutual assent to change the agreement and waive a jury trial is required. *Id.* at 206. The court concluded that "[i]n New Jersey, the unilateral addition of an arbitration agreement into a contract of adhesion cannot be given legal effect" and, as such, the "bill stuffer" notice was unenforceable.[1] *Id.* at 207; *see also FIA Card Services, N.A. v. Cohen*, 2009 WL 1675533 (N.J. App. Div. June 17, 2009) (finding an unsigned, undated, unassented-to agreement sent via mail changing terms of services to mandate arbitration unenforceable).

Here, as in *Shea*, Wells Fargo seeks to enforce unassented-to terms and conditions contained in a Deposit Agreement that Wells Fargo claims it first unilaterally modified four years after Mrs. Coiro opened her account (and then again in 2010, eleven years after the account

---

[1] *Shea* was not followed in *Cohen v. Bank, N.A.*, 679 F. Supp. 2d 582, 591-92 (D.N.J. 2010), but that case is significantly distinguishable. *Cohen* examined Delaware law, which in contrast to New Jersey law, expressly allows "bill stuffer" amendments. *Id.* at 592. Further, the arbitration clause at issue in *Cohen* was far more favorable than the one here. It allowed an arbitrator to shift attorneys' fees to *either* party in accordance with "any applicable law." *Id.* at 594. Here, the attorneys' fees provisions benefit only Wells Fargo, and are not equally applicable and beneficial to the consumer. *See* Point II(B)(3) *infra*.

was opened).  Wells Fargo does not and cannot dispute that Mrs. Coiro did not agree to arbitrate when she opened her account and signed an agreement with Wells Fargo's predecessor in 1999. As in *Shea*, Mrs. Coiro cannot be bound by Wells Fargo's belated terms and conditions in the 2003 Amendment or the 2010 Amendments because she did not sign her assent to these provisions.  *See, e.g., Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3d Cir. 1996) (court will not compel arbitration where party is not a signatory to arbitration agreement).  This alone is a sufficient basis for this Court to deny Wells Fargo's motion.

> **B.**     **As A Matter Of Fact, Mrs. Coiro Did Not Agree To Arbitrate.**

Apart from the legal issue raised in the preceding section, in order to compel arbitration, a court must find "*evidence* sufficient to establish the parties' consent to arbitration." *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994) (emphasis added).  As the Third Circuit has explained, if there is any issue of material fact as to whether a party expressly and unequivocally consented to arbitration, that issue should be the subject of discovery and should proceed to the finder-of-fact:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. *Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.* The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Par-Knit Mills, Inc.*, 636 F.2d at 54 (emphasis added).  Where the agreement to arbitrate is not contained in the original agreement, but rather is akin to "so-called 'bill-stuffing,' the question of customer 'acceptance' is one of law dependent necessarily on the operative facts." *FIA Card Services*, 2009 WL 1675533, at *3.

In *FIA Card Services*, the New Jersey Appellate Division reversed the grant of summary judgment because of an evidentiary dispute over whether a party received proper notice of the bank's unilateral amendment containing an arbitration clause. There, MBNA (like Wells Fargo here) "never submitted a duly executed and dated arbitration agreement, nor for that matter any evidence that defendant ever received it, and defendant expressly denied receipt." *Id.* at *3. The Appellate Division rejected the bank's position (the same one taken here) that evidence of mailing alone may bind a party to an arbitration clause. *Id.* ("[E]ven if MBNA could irrefutably show that the amendment was sent ... [the customer] would not be bound by any of its terms that derogated from her rights under the originally executed credit card contract unless MBNA could also show that she assented to such modified or additional terms."). The court further rejected MBNA's position that acceptance of the arbitration clause could be inferred simply by the customer's conduct. *Id.* In short, the Appellate Division in *FIA Card Services* rejected the identical arguments that Wells Fargo makes here, and it did so at a far more advanced procedural stage in the litigation-- summary judgment-- after the parties engaged in discovery. *Id.* at *4.

The evidence submitted by Wells Fargo in this case falls far short of the requisite showing of Mrs. Coiro's assent to arbitration. Wells Fargo has not produced any agreement to arbitrate signed by Mrs. Coiro. As set forth herein, the only document bearing Mrs. Coiro's signature is her 1999 original account agreement which admittedly is silent as to arbitration.

Wells Fargo's assertion that Mrs. Coiro is subject to arbitration is apparently based on the 2003 Amendment to her 1999 account agreement, which followed the merger of First Union Bank and Wachovia. According to the Merck Declaration, the 2003 Amendment was mailed to Mrs. Coiro's "then-current address" along with a "welcoming document." Merck Decl. ¶ 6. Apart from Mr. Merck's statement that the documents were mailed (which is not based on Mr.

Merck's personal participation in the alleged mailing), there is no actual evidence of any such mailing, much less evidence of a proper mailing to Mrs. Coiro. Moreover, just like the bank in *FIA Card Services*, Wells Fargo has not even attempted to introduce any evidence that the 2003 Amendment and welcoming document were ever *delivered* to Mrs. Coiro.

Even if those documents were delivered, which Mrs. Coiro has denied, the welcoming document stated that "there are virtually *no changes* to [the] accounts," and its summary of "*important* information about [the] account and services" failed to mention that Wells Fargo had slipped in an arbitration clause and a class action waiver. *See* Merck Decl. Ex. C at p. 2, 5-10 (emphasis added). Having induced its customers to overlook those new provisions, Wells Fargo cannot now enforce them against Mrs. Coiro or claim that she assented to them. *See Berman v. Gurwicz*, 178 N.J. Super. 611, 617-18 (Ch. Div. 1981) ("As a general rule one who does not choose to read a contract before signing it cannot later relieve himself of its burdens. However, this rule does not apply when the execution of the contract has been induced by fraud, even though the fraud may have been discovered by reading the document. Nor does it apply when one party has induced the other not to read the contract in full.") (internal citations omitted).

Wells Fargo's reliance on the 2010 Amendments is ineffective for another reason. Mr. Merck states that these documents were "created in the normal course of business" and maintained by Wells Fargo, but conspicuously fails to state that the 2010 Amendments were ever sent to Mrs. Coiro. Absent proof of mailing of the 2010 Amendments, which Mrs. Coiro and her son deny receiving, Wells Fargo cannot bind Mrs. Coiro to the terms of those documents.

Even if Wells Fargo had introduced evidence of a proper mailing and/or delivery of any of its amendments (which it has not), Mrs. Coiro has rebutted that evidence. Both Mrs. and Mr. Coiro's declarations show that Mrs. Coiro never agreed to arbitrate her claims in 1999, or at any

time thereafter.  Mrs. Coiro does not even have an understanding of the process of arbitration. *Id.* at ¶ 9.  At no time did anyone ever explain that she was giving up her right to litigate on behalf of a class.  *Id.*  At the very least, Mrs. Coiro has raised genuine issues of fact as to whether the parties have any agreement to arbitrate.  This case should proceed in discovery.

## II.   ASSUMING THERE IS AN AGREEMENT TO ARBITRATE, THAT AGREEMENT IS UNENFORCEABLE

If this Court concludes that Mrs. Coiro and Wells Fargo formed a valid agreement to arbitrate (which it should not), it should decline to enforce the arbitration clause.  The relevant language reads as follows:

> **25. Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions.**  If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code.  ...
>
> Each party will pay its own costs and attorney's fees...
>
> To the extent permitted by law, if any dispute or claim results in a lawsuit, and neither you nor we have elected or requested arbitration, you and we knowingly and voluntarily agree that a judge, without a jury, will decide the case.  The arbitration or trial will be brought individually and not as part of a class action.  If it is brought as a class action, it must proceed on an individual (non-class, non-representative) basis.   YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.

*See* Merck Decl. Ex. E at ¶ 25.

Immediately following the arbitration provision, in a section titled "Conflicts/Disputes Involving the Account," is an onerous fee provision specifying that the customer must reimburse the Bank "for any loss, costs of expenses, including without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law, that we incur as a result of any dispute involving your account...."  Merck Decl. Ex. E at ¶ 26.

Section 2 of the Federal Arbitration Act ("FAA") provides that an agreement to arbitrate is enforceable, except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, the FAA was enacted to place arbitration agreements on equal footing with other contracts, and not to make arbitration agreements more enforceable. *Prima Paint Corp. v. Flood & Concklin Mfg. Co.*, 388 U.S. 395, 423 (1967). The Supreme Court has routinely held that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In fact, just last year, the Supreme Court again expressed that the "saving clause [of the FAA] permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'" as long as the defenses are not such that they "apply only to arbitration or [] derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746.

### A.   *AT&T v. Concepcion* is not controlling.

Wells Fargo relies upon *Concepcion* to support the position that the arbitration provision is enforceable. However, this mechanistic application of Concepcion would be erroneous since the basis of the holding in *Concepcion* was preemption – whether a California state law declaring class action waivers *per se* unenforceable preempted the FAA. 131 S. Ct. at 1742. Here, there is no state law that runs afoul of the FAA. Unlike California, New Jersey does not have a bright line rule like the *Discover Bank* rule at issue in *Concepcion* that deemed class action waivers *per se* unconscionable. Instead, New Jersey requires a case-by-case determination on the validity of arbitration clauses. *Delta Funding Corp. v. Harris*, 189 N.J. 28, 39-40 (2006). *See also* the accompanying Declaration of Bruce D. Greenberg (the "Greenberg Decl.") Ex. A (*Sutherland v.*

*Ernst & Young LLP*, 10 Civ. 3332 (KMW), slip op. at *14 (S.D.N.Y. January 17, 2012) (The Discover Bank rule differs from "a case-by-case analysis that considers, among other thing, the ability of a plaintiff to obtain legal representation and resolve her claims.")).

Any reliance by Wells Fargo on *Concepcion* is also misplaced because the basis for that decision was the consumer-friendly nature of AT&T arbitration clause, which vastly differs from the one-sided nature of the provision at issue here.  This is demonstrated by the specific question presented in *Concepcion*, which was whether the FAA preempts state law invalidating a class ban *where class treatment is "not necessary to ensure that the parties … are able to vindicate their claims." See* Petition for Writ of Certiorari, *Concepcion*, 2010 WL 6617833, at *2 (No. 09-893) (emphasis added). *See also Feeney v. Dell Inc.*, No. MICV 2003-01158, 2011 WL 5127806, at *9 (Mass. Super. October 4, 2011) ("The logic of *Concepcion*, on the other hand, did not stray from the specific question on which the United States Supreme Court granted certiorari…."). The Supreme Court rejected the argument that class proceedings are necessary to prosecute small-dollar claims only because the Concepcions were certain to seek redress outside the class action setting due to the consumer-friendly nature of AT&T's arbitration provision.  *Concepcion*, 131 S. Ct. at 1753.

In contrast to the clause in *Concepcion*, Wells Fargo's clause is significantly more onerous and oppressive to consumers such as Mrs. Coiro and actually imposes disincentives to bring any claims whatsoever.  As illustrated by the following chart, instead of ensuring that a consumer-friendly and cost-effective forum is available, Wells Fargo has dictated a costly process in which no rational consumer would participate:

| AT&T Agreement[2] | Wells Fargo Agreement |
|---|---|
| The arbitration provision sets forth a detailed description of arbitration and an explanation of the arbitration process, which as explained in Point II(B)(2) *infra*, is required by the American Arbitration Association's ("AAA") Consumer Due Process Protocol. *See* Greenberg Decl. Ex. B at p. 55a, 58a. The provision clearly sets forth that consumers may initiate dispute proceedings by completing a one-page Notice of Dispute form available on AT&T's Web site. If AT&T does not offer to settle the dispute or it is not resolved within 30 days, the consumer may invoke arbitration by filing a separate Demand for Arbitration, which is also available on AT & T's Web site. As mandated by the AAA, the provision provides the consumer with the Web site addresses in which forms may be obtained and where the AAA rules and process are detailed. *Id.* at 58a-59a. The provision also informs the consumer of the convenience of arbitration and that if the claim is less than $10,000, the arbitration may be conducted telephonically or solely on the basis of documents. *Id.* at 59a. | No comparable provision. With the exception of stating that the AAA rules govern the parties' dispute, Wells Fargo's arbitration provision fails to provide any information regarding the AAA rules and does not state AAA's Web site address or phone number despite AAA's instruction to do so. *See* Merck Decl. Ex. E at ¶ 25. |
| AT&T will bear all costs associated with non-frivolous claims "no matter who wins." *Id.* at 55a-55b. | No comparable provision. In fact, consumers must pay their own costs and fees and are potentially subject to enormous potential exposure for reimbursing Wells Fargo for all expenses, including attorneys' fees and internal investigations. *See* Merck Decl. Ex. E at ¶ 26. Wells Fargo goes so far as to protect its right to recoup fees in not only one, but two provisions without including any comparable provisions providing the same benefit to consumers. *Id.* at ¶¶ 26, 29. |
| Disputes may be resolved through small claims court. *Id.* | No comparable provision despite the fact that as detailed in Point II(B)(2) *infra*, the AAA Due Process Protocol mandates that consumers should be provided with an option to pursue claims in small claims court – a forum less intimidating and costly to the average lay |

---

[2] For the Court's convenience, the arbitration provision at issue in *Concepcion* is attached to the Declaration of Bruce D. Greenberg as Exhibit B and was obtained from the Appendix of the Petition for a Writ of Certiorari filed in *Concepcion*.

| | |
|---|---|
| | person. Undoubtedly, the omission of this information serves Wells Fargo's intention to deter consumers from initiating disputes against the Bank. |
| The consumer is guaranteed a "special premium" of $7,500 if the result of the arbitration is better than AT&T's last settlement offer, which offer AT&T will not disclose to the arbitrator prior to the arbitrator rendering a decision. *Id.* at 55a, 57a, 60a.[3] | No comparable provision. Consumers are not entitled to any minimum recovery. The omission of such a provision, and a provision stating that the consumer will not have to pay any costs associated with non-frivolous disputes, coupled with the inclusion of a provision entitling Wells Fargo to *recoup* its attorneys' fees marks the stark contrast between the two provisions. Clearly, AT&T's provision does not have the deterrent effect contemplated by Wells Fargo. |
| If the result of the arbitration is better than AT&T's last settlement offer, the consumer is entitled to an "attorney premium" of double attorneys' fees, unless the consumer is entitled to a greater amount under statutory law. *Id.* at 60. | No comparable provision. Wells Fargo reserves its right to recoup its own fees in direct contravention of the CFA and does not reserve the consumer's right to statutory damages. *Id.* at ¶¶ 26, 29. |
| The "attorney premium" also includes any expenses that the attorney reasonably accrues for investigation, preparing and pursuing the claim. *Id.* | No comparable provision. Consumers are potentially subject to enormous potential exposure for reimbursing Wells Fargo for all expenses, including internal investigations. *See* Merck Decl. Ex. E at ¶ 26. |
| Regardless of AT&T's last settlement offer, the consumer's contractual right to double fees is supplemented by the consumer's entitlement to recover attorneys' fees to the same extent as the consumer would be in court. *Id.* at 57a. | No comparable provision. Wells Fargo does not inform the consumer that she is entitled to obtain the same relief from an arbitrator that she could obtain from a judge. |
| If AT&T does not offer the consumer a settlement prior to the selection of an arbitrator, the consumer is entitled to the $7,500 "special premium", as well as the "attorney premium" if the arbitrator grants the consumer *any* relief on the merits. *Id.* at 60a. | No comparable provision. Consumers are not entitled to a minimum of a reasonable settlement offer or a premium payment. |
| The arbitrator has the right to award any form of individual relief, including punitive | Wells Fargo expressly states that consumers are not entitled to recover punitive or |

---

[3]Specifically, the "special premium" was the greater of $5,000 or the jurisdictional limit of the small claims court in the consumer's county, which was $7,500. *See* Cal. Civ. Proc. Code § 116.221.

| | |
|---|---|
| damages. *Id.* at 61a. | consequential damages, which directly contravenes the CFA.[4]  *See* Merck Decl. Ex. C at ¶ 28. |
| AT&T may never seek reimbursement of its attorneys' fees, even if it is entitled to by statutory law. *Id.* | No comparable provision.  Wells Fargo expressly reserves the right to recover its attorneys' fees in two separate provisions. *See* Merck Decl. Ex. C at ¶¶ 26, 29. |
| AT&T agrees to not seek any payment from consumer. | No comparable provision.  Instead, Wells Fargo can collect its expenses from the consumer's account *without notice to the consumer.  See* Merck Decl. Ex. C at ¶ 26 (emphasis added). |

        None of the consumer-friendly aspects of the arbitration provision that guided the

Supreme Court's finding in *Concepcion* are present in Wells Fargo's arbitration clause.  In fact,

as shown in the chart above, certain aspects of Wells Fargo's arbitration provision totally

contradict the very aspects of AT&T's provision that guided the Supreme Court's opinion.

These aspects *incentivized* consumers to proceed to arbitration on an individual basis.  As the

district court noted, the arbitration clause would leave the Concepcions "*better off* … than they

would have been as participants in a class action"  because as the Ninth Circuit admitted,

"aggrieved customers who filed claims would be 'essentially guarantee[d]' to be made whole."

---

[4] The arbitration provision does not state, like AT&T's provision states, that the arbitrator is entitled to award any relief available to Mrs. Coiro.  The arbitration provision operates in tandem with the limitation on damages provision.  Thus, this provision limiting Mrs. Coiro's relief further precludes Mrs. Coiro from vindicating her statutory rights in arbitration and is therefore unenforceable.  *See, e.g., Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (invalidating arbitration clause "[b]ecause the remedies limitation improperly proscribes available statutory remedies"); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1060 (11th Cir. 1998) (refusing to enforce arbitration clause where its limitation on damages was "fundamentally at odds with the purposes of Title VII"); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670 (6th Cir. 2003) (holding "the limitations that the Circuit City arbitration agreement places on the damages a claimant may recover from arbitration are unenforceable"); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002) (stating plaintiff cannot be forced "to arbitrate his statutory claims without affording him the benefit of the full range of statutory remedies").

*Concepcion*, 131 S. Ct. at 1753 (emphasis in original).  Accordingly, the Concepcions' claim was "most unlikely to go unresolved."  *Id.*

*Concepcion* was predicated on the assumption that the consumer-friendly nature of AT&T's arbitration provision ensured that the agreement did not interfere with consumers' ability to vindicate statutory rights.  Nothing in the opinion suggests that the Supreme Court abandoned the principle that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

In fact, when faced with onerous arbitration provisions unlike the provision at issue in *Concepcion*, courts continue to find the provisions unenforceable. Just recently, the Southern District of New York emphatically reaffirmed that "an agreement to arbitrate may not be enforced if proceedings 'in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court.'" *See Sutherland*, slip op. at *17 (Greenberg Decl. Ex. A).  *See also NAACP of Camden County E.,* 421 N.J. Super. at 431 (finding an arbitration provision unconscionable and unenforceable where the assorted documents constituting the agreement failed to "convey – with precision and consistency – what the exact terms and conditions of that arbitration process would be."); *Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th 74, *7, *9 (Cal. Ct. App. 2d Dist. 2011)  (where the court recognized that *Concepcion* "does not preclude the application of the unconscionability doctrine to determine whether an arbitration provision is enforceable" and found that an arbitration provision that includes "harsh one-sided terms in an effort to ensure that the [defendant] will be the prevailing party" is unconscionable and thus, unenforceable.); *Feeney*

*v. Dell Inc.*, No. MICV 2003-01158, 2011 WL 5127806, *8 (Mass. Super. October 4, 2011) ("[Dell's] arbitration agreement stands in stark contrast to … *Concepcion*, [], which had so many pro-consumer incentives that an individual consumer might be better off in arbitration that in class litigation.  The Dell Arbitration Clause provides no incentives….").

   *Sutherland* recognized that the applicability of *Concepcion* was "a close question," but found that the unique provision at issue in *Concepcion* was pivotal to the vindication of rights argument rejected by the Supreme Court.  *Sutherland*, slip op. at *9, *11-*12.  As the court noted:

> There is a difference, however, between claims that might slip through the cracks because plaintiffs choose not to prosecute them individually, and claims for which a plaintiffs seeks redress but is precluded from vindicating her rights.  This difference is the difference between the situation faced by the Concepcions and that faced by Sutherland.  The terms of the arbitration agreement at issue in Concepcion ensured that the Concepcions could bring their claim in arbitration on an individual basis, either representing themselves or with counsel.  The fact that a plaintiff in the same situation as the Concepcions might choose not to make a claim for such a small overcharges is not the Court's concern, even if a class-action lawyer might be eager to bring the case on behalf of all similarly situated plaintiffs, but for the class-action waiver.  By contrast, the terms of the arbitration agreement and the cost of discovery in Sutherland's case preclude her from redressing alleged [] violations.

*Id.* at *11-12.  Likewise, the terms of Wells Fargo's arbitration provision, unlike AT&T's provision, effectively render Wells Fargo litigation-proof and preclude Mrs. Coiro from vindicating her rights.  Thus, in addition to the absence of the preemption issue, the factual differences between this case and *Concepcion* are so substantial and significant that *Concepcion's* holding is not controlling.

   **B.    The Arbitration Provision Is Unconscionable Under New Jersey Law.**

   The Federal Arbitration Act's saving clause expressly preserves state-law contract principles that do not discriminate against arbitration by conditioning the enforceability of

arbitration agreements on "grounds" available "at law or in equity" for challenging "any contract." 9 U.S.C. § 2. *Concepcion* did not alter this principle. *See NAACP of Camden County E.*, 421 N.J. Super. at 428 ("[S]tate courts remain free to decline to enforce an arbitration provision by invoking traditional legal doctrines governing the formation of a contract and its interpretation."). The Court expressly noted that the FAA's saving clause entitles courts to invalidate arbitration provisions based upon basic contract law principles such as duress, fraud and unconscionability. *Concepcion*, 131 S. Ct. at 1750 n.6.

In New Jersey, a basic contract law principle is that an unconscionable contract cannot be enforced. The determination of unconscionability calls for a fact-sensitive analysis in each case, even when a contract of adhesion is at issue. *Delta Funding Corp.*, 189 N.J. at 39-40. To determine whether a contract of adhesion is unconscionable under New Jersey law, courts must "look[] not only to the take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interest affected by the contract." *Rudbart v. N. Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992), *cert. denied*, 506 U.S. 871 (1992). These "factors focus on the procedural and substantive aspects of a contract of adhesion in order to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permits its enforcement." *Delta Funding Corp.*, 189 N.J. at 40 (internal citations omitted). Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," while substantive unconscionability

focuses on so overly harsh or one-sided terms "so as to shock the court's conscience." *Sitogun Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564-65 (Ch. Div. 2002).

> **1. The Arbitration Provision is Procedurally Unconscionable Because Mrs. Coiro Did Not Assent, or Even have Notice of, the Terms of the 2003 or 2010 Amendments.**

The oppressive nature of the arbitration provision is shown in the chart *supra*. Further, it is generally recognized that contracts of adhesion "necessarily involve indicia of procedural unconscionability" by their very nature because the defendant, like Wells Fargo here, typically possesses superior bargaining power and sophistication. *Delta Funding Corp.*, 189 N.J. at 39. "Although that level of procedural unconscionability does not, by itself, render [a contract provision] unenforceable, it must be taken into account as [the court] turn[s] to the public interests affected by the contract." *Id.* at 40-41 (internal quotations omitted).

The surprise and the public interest elements of procedural unconscionability call for a finding of unconscionability here. As argued in Point I(B) *supra*, the Amendments represented the Bank's unilateral and surreptitious (given the Bank's statements that nothing important had changed) modifications to the parties' initial contract with First Union Bank by way of "bill stuffers." *See* Merck Decl. ¶¶ 6-8.

As stated herein, New Jersey has expressed disapproval of "bill stuffer" modifications and held their validity to be fact-sensitive. *Shea*, 362 N.J. Super. at 202; *FIA Card Services*, 2009 WL 1675533, at *2-*3. *See* Point I *supra*.[5] This Court should follow these rulings. Barring "bill

---

[5] This is similar to the approach taken in California, where "bill stuffer" modifications are unenforceable. *See Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (Cal. Ct. App. 1998). California, like New Jersey, has long been in the vanguard of consumer protection. *See*, *e.g.*, *Kugler v. Romain*, 58 N.J. 522, 539 (1971) (discussing the Supreme Court of California's pronouncement in *Vasquez v. The Superior Court of San Joaquin County*, 484 P.2d 964 (1971), that that the "[p]rotection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society").

stuffer" modifications does not deter the purposes and objectives of Congress in enacting the FAA.   Instead, it ensures that consumers are afforded basic procedural requirements (notice, assent and adherence to the doctrines of good faith and fair dealing) when faced with any changed provision. Any other result would effectively grant Wells Fargo the unfettered discretion to impose unconscionable contract terms upon its customers at its whim, and by way of including these terms in a "bill stuffer" that provides little or no notice to consumers.   When the unconscionable provision at issue is one that includes a class action waiver, such a ruling would render consumers powerless to deter fraudulent corporate practices unless the provision is so consumer-friendly (like AT&T's provision) so as to incentivize consumers to pursue fraud claims (much in the way that the Consumer Fraud Act does by allowing prevailing plaintiffs to recover attorneys' fees).   As discussed in Point II(A) *supra*, Wells Fargo's arbitration clause is not consumer-friendly and actually deters consumers from bringing consumer fraud claims against Wells Fargo. Therefore, the Court should find that the arbitration provision is procedurally unconscionable and thus, unenforceable.

### 2. The Arbitration Provision is Procedurally Unconscionable Because it Does Not Adhere to the AAA Protocols and Principles of Procedural Unconscionability.

The arbitration provision states that the AAA Commercial rules apply to the parties' dispute.   *See* Merck Decl. Ex. E at ¶ 25.   The AAA has set forth a "Consumer Due Process Protocol" for consumer transactions.   *See* Greenberg Decl. Ex. C.   The Commercial rules supplement this protocol and since it is applicable to commercial transactions involving consumers who purchase goods or services for household use.   *Id.* at p. 4; *see also id.* at Ex. D. "Banking" is referred to in the "scope" of the Consumer Due Process Protocol.   *Id.* at Ex. C, p. 4.

"The AAA will only administer [a] dispute if the arbitration clause meets certain fairness standards that are contained in the AAA's Consumer Due Process Protocol."  *Id.* at Ex. E, pp. 1-2.  The Consumer Due Process Protocol goes through various "principles" that the Advisory Committee sets forth to "describe a baseline of reasonable expectations" for consumers and to provide standards to determine whether an arbitration provision is adequate and enforceable.  *Id.* at Ex. C, p. 7.  Despite the fact that "[t]hese principles identify specific *minimum* due process standards," *id.* (emphasis added), Wells Fargo's provision fails to meet most, if not all, the Principles.  As such, it is unlikely that the AAA will administer the parties' dispute due to the procedural unconscionability of Wells Fargo's arbitration provision, which is a further objective demonstration of why the provision should be voided as unconscionable.[6]

The AAA mandates that businesses draft arbitration clauses that "substantially comply with the Principles of the Consumer Due Process Protocol" if the AAA is named as the dispute resolution provider in an arbitration provision.  *Id.* at Ex. E, p. 1-2.  If a business does not comply with the Principles, the AAA will refuse to administer cases where the business is a party until the agreement is in compliance.  *Id.*  Pursuant to Principle 11 of the Consumer Due Process Protocol,

> Consumers should be given:
>
> 1. clear and adequate notice of the arbitration provision and its consequences, including a statement of its mandatory or optional character;

---

[6] Aside from Wells Fargo's failure to incorporate the principles of the AAA's Due Process Protocol in drafting its arbitration agreement, the AAA may not agree to administer the parties' dispute due to a self-imposed moratorium on consumer disputes.  On July 27, 2009, the AAA announced in a press release that due to "weaknesses" in its consumer arbitration process, the AAA would no longer accept to arbitrate matters initiated by businesses involving "consumer finance matter[s]" where the consumer did not agree to arbitrate.  *See* Greenberg Decl. Ex. D.  The AAA's moratorium announcement supports Mrs. Coiro's position that the AAA is unlikely to agree to administer the parties' dispute.

2. reasonable access to information regarding the arbitration process, including basic distinctions between arbitration and court proceedings, related costs, and advice as to where they may obtain more complete information regarding arbitration procedures and arbitrator rosters;

3. notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration in appropriate cases; and

4. a clear statement of the means by which the Consumer may exercise the option (if any) to submit disputes to arbitration or to court process.

*Id.* at Ex. C, p. 2-3.  As the Advisory Committee notes, "Principle 11 emphasizes the importance of knowing, informed assent to arbitration agreements."  *Id.* at p. 17.  The Committee emphasizes the necessity of notice and informed assent by stating:

> Consumers should have clear and adequate notice of the arbitration provision and basic information regarding the process at the time of assent. The appropriate method of giving notice and providing essential information will vary with the circumstances. For example, electronic transactions involving software licensure agreements require different notice procedures than face-to-face negotiations or paper transactions. *In all cases, however, there should be some form of conspicuous notice of the agreement to arbitrate and its basic consequences (including comparison to court process, cost information, etc.).* In addition, the Consumer should be given the opportunity to acquire additional information regarding the arbitration process. The latter might be obtainable through a mail or Web site address, an 800 number or other means for Consumers to obtain additional information regarding arbitration rules and procedures (such as a brochure available on request).

*Id.* (emphasis added).   Additionally, pursuant to Principle 13 of the Consumer Due Process Protocol, "[n]o party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute. *Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration*."  *Id.* at p. 19 (emphasis added).  Finally, the Committee states:

> Among other things, Consumers should have access to information regarding the initiation of the arbitration process. This may be accomplished, for example, by

providing customers with a brochure outlining relevant arbitration procedures. *If the Consumer has the option of choosing between arbitration or court process, either at the time of contracting or after disputes have arisen, the timing and means of electing the option should also be clearly stated in the notice.*

*Id.* at p. 18 (emphasis added).   The Committee provides a sample arbitration provision in a "notice box" that fulfills the due process standards.  *Id.* at p. 17-18.

There is no question that Wells Fargo's arbitration provision does not meet the standards set forth by the AAA in the Consumer Due Process Protocol.  As outlined herein, Wells Fargo did not provide any notice whatsoever to Mrs. Coiro of the existence of the arbitration clause in any of the Amendments.  In fact, once First Union Bank merged with Wachovia, the Bank purportedly provided consumers with a welcoming document that states on its second page "that there are virtually no changes to your accounts and services," thereby discouraging consumers to even read the 2003 Amendment.  *See* Merck Decl. Ex. C at p. 2.  Further, the welcoming document includes "Quick Facts" to provide the consumer "a summary of important information about [the] account and services."  *Id.* at p. 5-10.  Neither these Quick Facts, nor any of the other pages of the 40-page welcoming document highlight the most significant change in the agreement – that Mrs. Coiro was waiving her constitutional right to bring her claims in a court of law.  Certainly, this contradicts the very purpose of the AAA's Consumer Due Process Protocol.

Although required by the AAA's Consumer Due Process Protocol, the arbitration provision fails to provide any information regarding the arbitration process[7], and the basic distinctions between arbitration and court proceedings with the exception of stating that the consumer is waiving a trial by jury.  Wells Fargo does not mention the related costs of arbitration or any "advice as to where [the consumer] may obtain more complete information regarding the

---

[7] Notably, while the bank provides consumers with a welcoming document to set forth all the purportedly new and improved banking services that the consumer will receive due to the merger, the bank fails to provide a similar packet of information on the AAA arbitration process.

arbitration procedures." *Id.* at p. 17.  The arbitration provision also fails to advise the consumer that she is entitled to pursue her claims in small claims court as an alternative to binding arbitration.  Wells Fargo also decidedly omits any statement of "the means by which the consumer may exercise the option [] to submit dispute to arbitration or to the court process." *Id.* More importantly, the provision fails to set forth "the timing and means of electing the option," *id.* at p. 18, a crucial omission here since Wells Fargo, despite electing its forum by filing its motion to dismiss, now seeks to compel arbitration because it is dissatisfied with this Court's denial of its motion to dismiss.

One need only compare the "notice box" provided by the AAA to Wells Fargo's arbitration provision to notice the glaring differences between the two.  Not only will this comparison conclude that the AAA is highly unlikely to administer the parties' dispute, but it highlights the extent of the procedural unconscionability of Wells Fargo's arbitration provision. It also highlights, once again, why *Concepcion* was decided the way it was – AT&T's provision fulfills every Principle in the AAA's protocol.

### 3. The Arbitration Provision is Unconscionable Because it Contradicts New Jersey's Consumer Fraud Act.

The arbitration provision is unconscionable because it contradicts the New Jersey Consumer Fraud Act (the "CFA") in that it mandates that Mrs. Coiro pay her own attorneys' fees in direct contravention of the CFA's fee-shifting provision.  *See N.J.S.A.* 56:8-19.  Further, Mrs. Coiro is potentially subject to reimbursing Defendants for attorneys' costs and fees pursuant to paragraph 26 of the Amendments, which also contradicts the CFA, and is therefore unconscionable.[8]  *See  Sanchez v. Valencia Holding Co., LLC*, 201 Cal. App. 4th at *17 (where

---

[8] Paragraph 29 of the Agreement, in which the Bank again unilaterally reserves its right to recoup costs and fees, also contradicts the CFA.  Paragraph 29 reserves the Bank's right to

the court found that by "creating the possibility that the buyer may have to advance unaffordable expenses, the [arbitration] provision discourages buyers from pursuing an appeal and enforcing their [statutory] rights" and thus, is unconscionable.).  Our Supreme Court has recognized that the fee-shifting provision contained in the CFA is "one of the deterrent aspects of the legislation." *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 21 (2004).  As the *Furst* Court stated, "[i]n a consumer fraud action, the Legislature has recognized that the right of access to the courts is meaningless unless the injured party has the resources to launch a suit. Fee-shifting provides an incentive to competent counsel to undertake high-risk cases and to represent victims of fraud who suffer relatively minor losses." *Id.*  By mandating that the consumer must pay her own arbitration costs, the arbitration provision eliminates the incentive the Legislature intended to confer on consumers by including the fee-shifting provision in the Consumer Fraud Act.

Wells Fargo reserves its right to seek reimbursement of costs and fees in paragraph 26 despite the language in paragraph 25 regarding each party's responsibility for their respective fees.  Therefore, the arbitration provision, when read in tandem with paragraph 26, is unenforceable not only because it violates the CFA, but because it is well-settled in New Jersey that fee-shifting provisions within arbitration clauses contained in contracts of adhesion are *per se* unconscionable and thus, unenforceable. *Delta Funding Corp.*, 189 N.J. at 43-44.  If a

reimbursement of "costs and expenses (including attorney's fees) incurred … in any lawsuit instituted by [the consumer] against [the Bank] where [the Bank] is the prevailing party."  *See* Merck Decl. Ex. E at ¶ 29.  This provision is unconscionable for the same reasons as the arbitration provision and paragraph 26.  *See also Cruz v. Wachovia Mortgage*, 775 F. Supp. 2d 1188, 1190-91 (C.D. Cal. 2011) (where the court declined to enforce an attorneys' fees provision in a boilerplate Adjustable Rate Mortgage Note and Deed of Trust contracts and noted that "[t]o saddle [plaintiffs] with nearly $20,000 in attorneys' fees sought by a giant financial institution merely because they had the temerity to file a lawsuit would be worse than inequitable and unreasonable; it would be a travesty").  Further, the Court should recognize the difficulty in harmonizing paragraphs 25, 26 and 29 in its determination of whether the arbitration provision is unconscionable.

provision of a consumer contract of adhesion allows the shifting of all arbitration costs to the consumer, such as paragraph 26 could, it "could chill [the plaintiff] and similarly situated consumers from pursuing their statutory claims through mandatory arbitration" and is thus, unenforceable.  *Id.* at 42.

Likewise, this "chilling effect" results when consumers are forced to arbitrate on an individual basis even if consumers must only pay their own costs and fees.  If forced to individually arbitrate claims at their own expense, the costs of doing so are prohibitively expensive, which contradicts the "[t]he fundamental remedial purpose of the [CFA] [which] dictates that plaintiffs should be able to pursue consumer-fraud actions without experiencing financial hardship." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 25 (1994).

If the parties are ordered to arbitrate, Wells Fargo will likely be represented by the very same prestigious national and international law firms currently representing it in these proceedings, while consumers are likely to appear *pro se* or not bring claims against the Bank at all, effectively rendering the Bank litigation-proof.[9]  *See*, *e.g.*, *Carnegie v. Household Int'l., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30."). This is in direct contravention of the legislative intent underlying the CFA to "provide[] an incentive to competent counsel to undertake high-risk cases and to represent victims of fraud

---

[9] To the extent Defendants may argue that the Court rejected this argument in *Concepcion*, the Court should note that the Supreme Court emphasized the consumer-friendly nature of AT&T's arbitration provision, which eliminated the deterrent effect caused by arbitration provisions such as the one at issue. As discussed in Point II(A) *supra*, Wells Fargo's arbitration clause is not consumer-friendly and does not contain any consumer-friendly provisions that would incentivize consumers to bring claims against the Bank.  As intended by Wells Fargo, the arbitration provision and paragraph 26 of the agreements instead deters consumers from bringing consumer fraud claims against the Bank, thereby causing the "chilling effect" denounced by our state Supreme Court in *Delta Funding Corp*.

who suffer relatively minor losses" by including a fee-shifting provision in the CFA. *Furst*, 182 N.J. at 21. At the risk of causing a "chilling effect" to valid pursuits of consumer fraud claims, the arbitration provision and paragraph 26 operate to circumvent the mandates of the CFA by forcing consumers to pay their own costs and potentially entitling the Bank to attorneys' fees.[10]

"[T]he legislative history [of the CFA] indicates that the provision for attorneys' fees was intended to impose on the *defendant* in a private action "a greater financial penalty . . . and to ensure that the financial cost to the private plaintiff was minimized and compensation maximized." *Cox*, 138 N.J. at 24 (emphasis added). The intent of the Legislature was certainly not to burden consumers with paying their own attorneys' fees or the risk of the absurd result of potentially having to pay a defendant's attorneys' fees. Ultimately, by forcing consumers to proceed on an individual basis, pay their own arbitration costs, and potentially be subject to reimburse defendants for their costs and fees, the Amendments effectively eliminate "one of the deterrent aspects of the [Consumer Fraud Act]" and render its fee-shifting provision – arguably the teeth of the CFA – totally meaningless. *See Furst*, 182 N.J. at 24. Accordingly, the arbitration provision is substantively unconscionable and thus, unenforceable.

### 4. The Arbitration Provision is Substantively Unconscionable Because the Consumer Does Not Benefit Equally From the Fee-Shifting Language Contained in Paragraph 26.

Substantive unconscionability "suggests the exchange of obligations so one-sided as to shock the court's conscience." *B & S Ltd., Inc. v. Elephant & Castle Int'l, Inc.*, 388 N.J. Super.

---

[10] The "chilling effect" of the arbitration provision is evident in the AAA's compilation of arbitrations it conducts in consumer cases. The AAA provides the compilation on its website. *See* Greenberg Decl. at ¶ 8. Of the 61,843 consumer cases reported by the AAA from July 1, 2006 to June 30, 2011, the AAA has arbitrated 6 banking disputes where Wachovia Bank, N.A. was the "non-consumer party" and 21 banking disputes where Wells Fargo Bank, N.A. was the "non-consumer party." *Id.* Therefore, only .0436% of the consumer disputes arbitrated by the AAA in the last five years have been consumer banking disputes against the Defendants.

160, 176 (Ch. Div. 2006); *see also* Restatement (Second) of Contracts § 208 cmt. d (1981) (terms "unreasonably favorable to the stronger party … show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms.").

While the arbitration provision states that each party pays for its own fees, paragraph 26 potentially[11] allows the Bank to recover "any loss, costs of expenses, including without limitation, reasonable attorneys' fees and the costs of litigation" as well as all "costs associated with investigation and research [the Bank] initiates internally."  *See* Merck Decl. Ex. E at ¶ 26. The arbitration provision, when read in conjunction with paragraph 26, is substantively unconscionable because the consumer does not obtain the same benefit as Wells Fargo.  Wells Fargo, while reserving its own right to recoup its loss, does not provide the consumer with the same protection.   Accordingly, the arbitration provision and paragraph 26 are substantively unconscionable and thus, unenforceable.

## III.   BOTH PARTIES ELECTED TO PARTICIPATE IN THIS LITIGATION

The arbitration provision upon which Wells Fargo relies is elective (unlike the mandatory provision in *Concepcion*), providing for arbitration "[i]f either you or we request."  *Id.* at ¶ 25. The elective clause does not remotely comply with the AAA's mandate that elective arbitration clauses "clearly" state "the timing and means of electing the option." *See* Greenberg Decl. Ex. C at p. 17.  To the contrary, the provision is silent as to when the election to arbitrate must occur. Nor does the provision say anything about whether, once an election is made by one party, the opposing party can contest that election.[12]

---

[11] Paragraph 26 is unconscionable for the reasons that apply to the arbitration provision.

[12] None of Wells Fargo's authorities cited at Db11-12 concern elective arbitration provisions and are thus irrelevant to this Court's analysis.   The distinction between a mandatory and elective provision is critical: where arbitration is mandatory, arbitration is theoretically the *only* forum

"[A]n ambiguous contract is to be construed against the drafter…" *Englert v. The Home Depot*, 389 N.J. Super. 44, 58 (App. Div. 2006). Taking this principle into consideration, this Court can reach one of two logical conclusions: (1) that Mrs. Coiro exercised her right to elect to litigate this case when she chose to file suit, and the language of the provision provides no means for Wells Fargo to trump Mrs. Coiro's election; or (2) if Wells Fargo does have a right of election, it made its election to participate in this litigation by its litigation conduct.

It is clear that Wells Fargo sampled this Court's receptivity to its positions and arguments in support of dismissal of this lawsuit and now it seeks to repudiate its election because it was dissatisfied. To allow a litigant under such circumstances to keep its true intentions silent and then to abandon its participation in the lawsuit and pursue arbitration to achieve a tactical advantage would work an injustice on the other litigants as well as a distortion and waste of the resources of the legal system itself. *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 225 (3d Cir. 2007) (*citing Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997) ("The 'prejudice' that supports a finding of waiver can be 'substantive' prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration...") (internal citations omitted)).  Neither applicable law nor basic equitable principles tolerate such a result. *See, e.g.*, *Konieczny v. Micciche*, 305 N.J. Super. 375, 380 (App. Div. 1997) (holding under New Jersey New Home Warranty and Builders' Registration Act that plaintiffs, "having opted for binding arbitration … are barred from seeking additional relief … from the courts").

---

where the case could proceed. In contrast here, the arbitration clause recognizes litigation as a permissible forum.  The policies underlying a court's decision to compel arbitration where a mandatory clause is at issue simply do not apply in this case.

## CONCLUSION

For the reasons set forth above, Mrs. Coiro respectfully submits that Defendants' motion to compel arbitration should be denied in its entirety.

Dated:  January 23, 2012           **LITE DEPALMA GREENBERG, LLC**

By:     /s/ Bruce D. Greenberg
        Bruce D. Greenberg (bgreenberg@litedepalma.com)
        Katrina Carroll (kcarroll@litedepalma.com)
        Susana Cruz Hodge (scruzhodge@litedepalma.com)
        Two Gateway Center, Suite 1201
        Newark, NJ 07102
        Telephone: (973) 623-3000
        Facsimile: (973) 623-0858

        *Counsel for Plaintiff*