NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPHINE COIRO, on behalf of herself and others similarly situated,<br><br>                 Plaintiffs,<br><br>v.<br><br>WACHOVIA BANK, N.A., WELLS FARGO BANK, N.A., and WELLS FARGO & COMPANY,<br><br>                 Defendants. | Civ. No. 11-3597<br><br>OPINION |

THOMPSON, U.S.D.J.

      This matter has come before the Court on Defendants Wachovia Bank, N.A. ("Wachovia"), Wells Fargo Bank, N.A. ("Wells Fargo Bank"), and Wells Fargo & Company's (collectively, the "Defendants") Motion to Compel Arbitration and Stay Litigation. [Docket # 22]. Plaintiff Josephine Coiro ("Coiro" or "Plaintiff") opposes this motion [31]. The Court has decided this matter after considering the parties' written submissions and after holding oral argument pursuant to Fed. R. Civ. P. 78(a). For the reasons set forth below, the Court will grant Defendants' Motion to Compel Arbitration and Stay Litigation.

    **I.**    **FACTS**

      This dispute arises out of an administrative hold placed on Plaintiff's bank account ("the Account"), jointly held by Plaintiff and her daughter, Annette Coiro ("the Debtor"), following the Debtor's bankruptcy filing. Plaintiff initially opened this joint account with First Union Bank ("First Union"). First Union later merged with Wachovia. Then, in 2008, Wachovia merged with Wells Fargo & Company, and the combined company continued operating under the name of Wells Fargo.

1

On May 21, 1999 Coiro entered into a written, signed contract with First Union entitled "Customer Access Agreement." (Merck. Decl. Ex. A). In the "Customer Access Agreement," Plaintiff agreed to be bound by the terms of First Union's "Deposit Agreement and Disclosures" (collectively, "the 1999 Agreement"). It was standard First Union practice to provide customers with a copy of the deposit agreement whenever a customer signed a Customer Access Agreement. (Abatemarco Decl. ¶ 5). The 1999 Agreement contained two provisions relevant to this pending motion. First, this agreement provided:

> We [i.e., First Union] have the right to change the terms of this Agreement and the fees, charges and other terms and conditions described in other documents incorporated by reference. We will notify you [i.e., Plaintiff] in writing at least thirty calendar days before the change will take effect if the change is not in your favor. Any such notification will be effective if mailed to the address of the account in our records if we have a valid address. This Agreement may not be amended or modified orally. . . .

(Abatemarco Decl. Ex. A, at 5). The 1999 Agreement also contained an arbitration provision that reads as follows:

> If either you [i.e., Plaintiff] or we [i.e., First Union] have any unresolvable [*sic*] dispute or claim concerning your account, it will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. Arbitration hearings will be held in the city where the dispute occurred or where mutually agreed to. A single arbitrator will be appointed by the AAA and will be a retired judge or attorney with experience or knowledge of banking transactions. The arbitrator will award the filing and arbitrator fees to the prevailing party. A judgment on the award may be entered by a court.

(*Id.*).

In 2003, after First Union's merger with Wachovia, Plaintiff was mailed a copy of a modified Deposit Agreement applicable to the Account at her then-current address ("the 2003 Agreement"). Following the Wachovia and Wells Fargo merger, Plaintiff was again mailed two

separate documents entitled "Deposit Agreement," which again contained modified terms applicable to the Account (collectively, "the 2010 Agreement").[1]

Similar to the 1999 Agreement, the terms of the 2010 Agreement also provide for arbitration of disputes between the parties. In addition, the 2010 Agreement contains a class-action waiver. The 2010 Agreement states in relevant part:

> If either you [i.e., Plaintiff] or we [i.e., Wachovia] request, any irresolvable dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. . . .
> To the extent permitted by law, if any dispute or claim results in a lawsuit, and neither you nor we have elected or requested arbitration, you and we knowingly and voluntarily agree that a judge without a jury will decide any dispute or claim that is not submitted to binding arbitration that results in a lawsuit. The arbitration or trial will be brought individually and not as part of a class action. If it is brought as a class action, it must proceed on an individual (non-class, non-representative) basis. YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.

(Merck Decl. Ex. D ¶ 25).

## II.  ARBITRATION

The first issue that this Court must address is whether there was a binding arbitration agreement between the parties.

### a. Standard of Review

The Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

[1] Both of these Deposit Agreements contain an identical arbitration provision. *Compare* (Merck Decl. Ex. D ¶ 25) *with* (Merck Decl. Ex. E ¶ 25). Therefore, for purposes of deciding this motion, the Court will treat these agreements as though they are the same.

contract." 9 U.S.C. § 2.  In enacting this provision, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Section two of the FAA thus "reflects an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLC v. Cocchi*, 565 U.S. ---, --- (2011) (*per curiam*) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (internal quotation marks omitted).

When a party refuses to submit to arbitration pursuant to a valid contract provision, the party seeking to arbitrate may petition a court for an order compelling arbitration.  9 U.S.C. § 4.  Similarly, a party may apply for a stay of pending litigation under section three of the FAA.  9 U.S.C. § 3.  "[T]he threshold issue under §§ 3 and 4 of the FAA [is] whether, under traditional contract law principles, an agreement to arbitrate is enforceable between the parties." *Invista S.A.R.L. v. Rhodia, S.A.*, 625 F.3d 75, 86–87 (3d Cir. 2010).  However, "[a]ny doubt concerning the scope of arbitrability should be resolved in favor of arbitration." *Mitsubishi Motor Corp.*, 473 U.S. at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011).

b. <u>Analysis</u>

After reviewing the evidence submitted by both parties in this case, the Court is satisfied that a valid contract to arbitrate exists between the parties.  When the initial 1999 Agreement was signed by Plaintiff, Plaintiff agreed that Defendants could modify the terms of the deposit agreement so long as she had sufficient thirty-day notice.  If Plaintiff did not agree to these new terms, she had the option to close her account within that thirty-day period.  Under New Jersey state law, silence may be deemed acceptance "where the particular circumstances reasonably impose on the offeree a duty to speak if the offer is rejected." *Johnson & Johnson v. Charmley*

4

*Drug Co.*, 95 A.2d 391, 397 (N.J. 1953). Moreover, unlike the cases cited to by the Plaintiff, the arbitration provision in the 2010 Agreement was not materially different from that contained in the 1999 Agreement. Therefore, the re-inclusion of an arbitration agreement in the updated 2010 Agreement should not have come as a surprise to the Plaintiff, and it did not materially change the previously-agreed-to terms.

Plaintiff raises one additional argument in regard to the arbitration provision: she argues that by filing a motion to dismiss earlier in this case, Defendants "elected" not to arbitrate. The 2010 Agreement provides that "[i]f either you or we request, any irresolvable dispute or claim concerning your account or your relationship to us will be decided by binding arbitration. . . . To the extent permitted by law, if any dispute or claim results in a lawsuit, and neither you nor we have elected or requested arbitration, you and we knowingly and voluntarily agree that a judge without a jury will decide any dispute or claim that is not submitted to binding arbitration that results in a lawsuit." (Merck Decl. Ex. D ¶ 25). Plaintiff seizes onto this language to argue, in effect, that because both parties voluntarily participated in this pending case (Plaintiff by filing the Complaint and Defendants by filing a motion to dismiss), all parties have irrevocably elected to have this dispute decided by a Court. As Plaintiff puts it, Defendants should not be permitted to "seek[] the proverbial second bite at the apple" after the Court denied their earlier motion to dismiss. (Pl.'s Br. 1).

The United States Supreme Court has repeatedly stated that "[a]ny doubt concerning the scope of arbitrability should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. Therefore, regardless of how this issue is framed—i.e., whether Defendants "waived" their right to arbitrate or whether Defendants "elected" to arbitrate—Plaintiff cannot prevail on this argument. Nothing in the

5

language of the 2010 Agreement's arbitration provision indicates that an election to participate in pending litigation is irrevocable. At the very least, this language is ambiguous, and therefore any interpretation must be in favor of arbitrability.

For these reasons, a valid agreement to arbitrate exists between the parties.

### III.     CLASS-ACTION WAIVER

Having decided that the 2010 Agreement is applicable to this dispute, the Court must next decide whether the class-action waiver contained in this agreement is valid. After considering the parties' arguments, the Court has concluded that Plaintiff has waived her right to participate in, or be represented in, any class action.

In *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740 (2011), the Supreme Court held that a California state rule classifying most collective-arbitration waivers in consumer contracts as unconscionable was pre-empted by the FAA. *Id.* at 1753. Defendants argue that the class-action waiver contained in the 2010 Agreement is valid under the Court's reasoning in *Concepcion*. Plaintiff argues, however, that this case is not governed by *Concepcion* because there is no categorical rule at issue. Rather, Plaintiff contends, the arbitration provision in this case is unconscionable under New Jersey common law based upon the specific contract language at issue. In other words, Plaintiff argues that the "savings clause" of section two of the FAA is applicable here.

Section two of the FAA provides that an arbitration agreement—including an agreement to arbitrate on an individual, non-class basis—"shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2. The Supreme Court's opinion in *Concepcion* made clear that categorical rules do not appropriately fit within this savings clause. As recently as this month, however, the Supreme Court made clear that a distinction exists in the application of the FAA's savings clause between

6

categorical rules and common-law unconscionability doctrine. In *Allen v. Lasalle Bank, N.A.*, 565 U.S. ---, slip op. at 4–5 (Feb. 21, 2012) (per curiam), the Court reversed the West Virginia Supreme Court's holding that predispute agreements to arbitrate personal-injury or wrongful-death claims are categorically unconscionable under state law and that this categorical rule is not pre-empted by the FAA. *Id.* at 2–4. The Court remanded the case, however, so that the state court could re-examine and clarify its ambiguous "alternative" holding that the particular arbitration clause at issue was unconscionable and therefore unenforceable. *Id.* at 4–5. Thus, this Court agrees with Plaintiff that *Concepcion* does not control this case. *See In re American Express Merchs. Litig.*, No. 06-1871, 2012 U.S. App. LEXIS 1871 (2d Cir. Feb. 1, 2012) ("*Amex III*") ("It is tempting to give . . . *Concepcion* and *Stolt-Nielsen* such a facile reading, and find that the cases render class action arbitration waivers per se enforceable. But a careful reading of the cases demonstrates that neither one addresses the issue presented here . . . ."). The Court does not agree with Plaintiff, however, that the class-action waiver in this case is unconscionable or otherwise unenforceable.

Under New Jersey law, the determination of unconscionability calls for a fact-sensitive analysis in each case. *See, e.g.*, *Delta Funding Corp. v. Harris*, 912 A.2d 104, 110–11 (N.J. 2006). Plaintiff argues that the class-action waiver in this case is both procedurally and substantively unconscionable. Procedural unconscionability deals with the manner in which the parties entered into a contract, and it takes into consideration "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Sitogun Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ch. Div. 2002) (citations omitted). Substantive unconscionability, on the other hand, is when the terms of an agreement are so one-sided that they "shock the court's conscience." *Id.* (citations omitted).

In this case, Plaintiff agreed to be bound by those terms of which she had sufficient thirty-day notice. Although Plaintiff argues that there is no evidence that she ever *received* the updated 2010 Agreement, this is beside the point. It was Plaintiff's obligation to keep Defendants up-to-date as to her current address, and she should have been aware that any notification was effective upon mailing. (*See* Abatemarco Cert., Ex. A, at 5).[2] Moreover, the class-action waiver was printed in large, capital letters, which should have indicated to the Plaintiff the importance of these words. Nothing indicates to the Court that the class-action waiver is procedurally unconscionable.

The Court is similarly not convinced that the class-action waiver is substantively unconscionable. Plaintiff argues that the arbitration provision is unconscionable because the attorney's fees provision—which mandates that Plaintiff pay her own costs and fees—is in conflict with the New Jersey Consumer Fraud Act (NJCFA), N.J.S.A. 56:8-1, *et seq*. This provision, however, merely reflects the "American" Rule of attorney's fees, and it certainly does not "shock the court's conscience." Plaintiff then points to paragraph 29 of the 2010 Agreement as being unconscionable. This provision requires that Plaintiff reimburse the Defendants' expenses if Defendants prevail. (Merck Decl. Ex. D ¶ 29). Even if this provision is unconscionable—an issue that the Court does not opine on—this would be severable from other provisions and does not call into question the entirety of the arbitration provision or the class-action waiver. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, --- U.S. ---, 130 S. Ct. 2772, 2778 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a

---

[2] The modification provision of the 2003 Agreement was even clearer about this. (*See* Merck Cert., Ex. B. ¶ 31 ("We will notify you in writing at least thirty calendar days before the change will take effect if the change is not in your favor. Any such notification will be effective if mailed to the address of the account in our records. If any such notice is returned to us as undeliverable, the changes described in that notice are still binding on you. Therefore, it is very important for you to notify us right away if your mailing address changes.")).

matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.")).

Lastly, Plaintiff argues that the terms of the class-action waiver and arbitration agreement are so one-sided in favor of the Defendants that an account holder would effectively be barred from vindicating their rights if the Court were to enforce these provisions. In support of this argument, Plaintiff relies on a case recently decided by the United States Court of Appeals for the Second Circuit, *In re American Express Merchs. Litig.*, No. 06-1871, 2012 U.S. App. LEXIS 1871 (2d Cir. Feb. 1, 2012) ("*Amex III*"). In that case, the Second Circuit was asked, in light of the Supreme Court's more recent decision in *Concepion*, to readdress its previous holding that a class-action waiver was unenforceable. In its first prior decision in the case, the Second Circuit held that "the class action waiver . . . cannot be enforced in this case because to do so would grant [Defendant] de facto immunity from antitrust liability by removing the plaintiffs' only reasonably feasible means of recovery." *Id.* at *5 (quoting *In re American Express Merchs. Litig.*, 554 F.3d 300, 320 (2d Cir. 2009) ("*Amex I*")). This barrier to effective redress placed the plaintiffs' lawsuit squarely within the savings clause of section two of the FAA. *Id.* (quoting *Amex I*, 554 F.3d at 320).

Following this decision, the Defendants petitioned the United States Supreme Court for a writ of certiorari. This petition was granted, and the Second Circuit's decision was vacated. In deciding this issue for a second time, the Second Circuit was asked to address the effect, if any, of the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010). The Second Circuit found that *Stolt-Nielsen* had no effect on its previous holding. *Amex III*, 2012 U.S. App. LEXIS 1871, at *6 (citing *In re American Express Merchs. Litig.*, 634 F.3d 187, 196 (2d Cir. 2011) ("*Amex II*")). In deciding this issue for the second time, the Second Circuit relied on the testimony of plaintiffs' expert witness, "in which he opined, inter alia, that

9

'in my experience, even a relatively small economic antitrust study will cost at least several hundred thousand dollars, while a larger study can easily exceed $1 million[. A]fter reviewing the complaint and doing some preliminary research in this case, it is my opinion that the cost for this case will fall in the middle of the range.'" *Id.* (citations omitted).

In addressing this issue for a third time, the *Amex* court started its analysis by stating that federal law "recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Amex III*, 2012 U.S. App. LEXIS 1871, at *8. Thus, if a contract clause were to act "as a prospective waiver of a party's rights to pursue statutory remedies [such as under a class action]. . ., we would have little hesitation in condemning the agreement as against public policy." *Mitsubishi Motors Corp.*, 473 U.S. at 632. The Second Circuit found this language persuasive, and held that neither *Stolt-Nielsen* nor *Concepcion* affected its prior determination. *Amex III*, 2012 U.S. App. LEXIS 1871, at *11. Moreover, neither *Stolt-Nielsen* nor *Concepcion* mentioned the Court's previous decision in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), which the Second Circuit found "controlling here to the extent that it holds that when a 'party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.'" *Amex II*, 634 F.3d at 197 (quoting *Green Tree*, 531 U.S. at 92).

After considering the evidence presented to it, the Court is not convinced that Plaintiff has met her burden in demonstrating that enforcement of the class-action waiver would effectively preclude any action seeking to vindicate proposed class members' legal rights. To begin, the Second Circuit recognized in *Amex III* that "plaintiffs so often fail in their attempts to overturn such waivers" because "the evidentiary record necessary to avoid a class-action

10

arbitration waiver is not easily assembled." *Amex III*, 2012 U.S. App. LEXIS 1871, at *11. Here, the amount that Coiro could potentially recover includes, *inter alia*, attorney's fees resulting from an attempt to unfreeze the disputed assets, lost value from the use of those assets during the period in which they were frozen, and any other incidental damage caused by not having access to those funds (e.g., late fees resulting from being unable to meet other obligations). This could feasibly result in damages measuring into the thousands. Moreover, the amount that Coiro could recover on an individual basis in this case would be tripled if she were to prevail on her NJCFA claims. *See* N.J.S.A. 56:8-19 (providing for treble damages to a prevailing private plaintiff). Indeed, this may well be a case, similar to the proposed lead plaintiffs in *Concepcion*, where Coiro "would be *better off* under [her] arbitration agreement with [Defendants] than [she] would have been as [a] participant[] in a class action, which 'could take months, if not years, and which may merely yield an opportunity to submit a claim for recovery of a small percentage of a few dollars." *Concepcion*, 131 S. Ct. at 1753.

      Perhaps more importantly, however, is that no evidence has been presented to the Court concerning the prohibitive cost of litigating this case. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. . . . How detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence is a matter we need not discuss; for in this case . . . [there was no] timely showing at all on the point." *Green Tree*, 531 U.S. at 92. Therefore, nothing indicates to this Court that Plaintiff or other proposed class members would be effectively barred from vindicating their rights if the class-action waiver is enforced. Plaintiff has failed to meet her burden.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Litigation is granted.  An appropriate Order will follow.

                                               */s/ Anne E. Thompson*
                                               **ANNE E. THOMPSON, U.S.D.J**

Date: February 27, 2012